[No. C060359. Third Dist. Mar. 30, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
DAIQUIRI E. HALL et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, II, III and V of the Discussion.

COUNSEL

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant Kelvin Anthony Hollins.

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant Daiquiri E. Hall.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Judy Kaida and Larenda Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—Defendants Daiquiri E. Hall and Kelvin Anthony Hollins each were convicted of multiple criminal charges arising from a robbery. On appeal, both defendants assert their federal constitutional rights were violated by an impermissibly suggestive field showup and imposition of an upper term sentence. They also both contend they were wrongly convicted of two counts of receiving stolen property instead of one.

Separately, Hollins contends his constitutional rights were violated by the admission of other crimes evidence and by the use of a juvenile adjudication to double his sentence. For his part, Hall contends he was wrongly convicted of both carrying a concealed firearm and carrying a loaded firearm in a public place because the latter offense is necessarily included in the former.

We agree defendants each could be convicted of only one count of receiving stolen property, but otherwise we reject their arguments. Accordingly, we will reverse their convictions on one of the counts of receiving stolen property (on which their sentences were stayed pursuant to Pen. Code,[1] § 654) and will otherwise affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2007, Denise Galvan was selling clothes for a living. On the evening of July 29, Galvan received a telephone call from someone who called himself Kevin and said he needed some clothes. She agreed to meet him at an address in Sacramento, and she persuaded Michelle Ezell (the mother of her brother's child) to go with her. They went in a car Galvan had rented.

---

[1] All further undesignated section references are to the Penal Code.

When they arrived at the address, two young men wearing dark hooded sweatshirts (later identified as defendants) came down the driveway. Galvan got out of the car, leaving it running, and Ezell remained in the front passenger seat. Galvan opened the door to the backseat, where the clothes were, and talked to defendants about buying the clothes. When she noted they were not even trying to look at the clothes and asked them if they lived there or had any money, Hall put a gun to her head and said, "Break your . . . self. Give me everything." Galvan gave him about $17 and started begging him not to shoot her. Ezell jumped from the car and ran, dropping three cell phones in her lap on the ground. Hall turned to look, and Galvan took the opportunity to run too. Defendants got in the car and drove away.

After a few minutes, Galvan found someone who let her use a phone to call 911. When the police arrived, Galvan and Ezell returned to the location of the robbery, where Ezell's cell phones had fallen to the ground, but the phones were no longer there.

Meanwhile, another police officer on patrol located the car and followed it. As he did so, it pulled over and the two occupants fled, disregarding his command to get down.

Other police officers and a police dog arrived and began searching the area for the suspects. One of the officers found a handgun about 30 feet from the car and another handgun about 40 feet farther away. They continued searching and in a nearby backyard found four cell phones and two black sweatshirts. An air unit told the officers there was someone on the roof of a shed in the adjacent yard, and the officers ordered him to come to them. He did so, and it turned out to be Hall. Shortly thereafter, Hollins was found in another adjacent yard.

After responding to the scene of the robbery, the police took Galvan and Ezell to view a suspect, who both victims said was not one of the perpetrators. The police then took them to another location, where they were first shown Hollins, then Hall, both of whom they recognized as the perpetrators. After identifying defendants, Ezell also identified her cell phones.

Defendants were jointly charged with two counts of carjacking (one for each victim), two counts of robbery (one for each victim), and two counts of receiving stolen property (one for the cell phones and one for the car). Hall was also charged with carrying a concealed firearm and carrying a loaded firearm in a public place. The carjacking and robbery charges included various enhancements, and there was an allegation that Hollins had a prior serious felony conviction for robbery.

The jury found Hall not guilty of the carjacking charges or of robbing Ezell, but guilty of robbing Galvan and of the receiving stolen property and firearm charges. The jury also found the enhancement allegations on the robbery charge true.

The jury found Hollins not guilty of the carjacking and robbery charges but guilty of the receiving stolen property charges. In a bifurcated proceeding, the court found that Hollins had a prior juvenile adjudication for robbery that could be used as a sentence enhancement.

The court sentenced Hall to the upper term of five years on the robbery charge based on the determination that the manner in which the crime was carried out indicated planning, Hall had engaged in violent conduct indicating a serious danger to society, and his criminal conduct was of increasing seriousness. The court added a consecutive 10 years for a firearm enhancement, then imposed but stayed, pursuant to section 654, the middle term of two years on each of the remaining charges of receiving stolen property, carrying a concealed weapon, and carrying a loaded firearm in a public place.

The court sentenced Hollins to the upper term of three years on one of the receiving stolen property charges (count six) because he was on probation, his criminal behavior was increasing in seriousness, and he engaged in violent conduct which indicates a serious danger to society. The court doubled the term to six years based on his prior conviction, then imposed a two-year term for the other receiving stolen property charge (count five), doubled that term, but stayed it pursuant to section 654.

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

*Multiple Firearm Convictions*

Hall was convicted of two firearm offenses: (1) carrying a concealed firearm (§ 12025, subd. (b)(6)); and (2) carrying a loaded firearm in a public

---

*See footnote, *ante*, page 380.

place (§ 12031, subd. (a)(2)(F)). He contends that the latter offense is necessarily included in the former and therefore his conviction for the latter offense cannot stand. He is wrong.

"In California, a single act or course of conduct by a defendant can lead to convictions 'of any number of the offenses charged.' [Citations.] But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098], italics omitted.) "In deciding whether an offense is necessarily included in another, we apply the elements test, asking whether ' " 'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense.' [Citation.]" ' [Citation.] In other words, 'if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*Id.* at p. 1034.)

Section 12025 makes it a crime to carry a concealed firearm. A person is guilty of carrying a concealed firearm if he or she "(1) [c]arries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person"; "(2) [c]arries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person"; or "(3) [c]auses to be carried concealed within any vehicle in which he or she is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person." (§ 12025, subd. (a).)

Subdivision (b) of section 12025 specifies different punishments for carrying a concealed firearm depending on various other factors. As applicable here, the statute makes the crime punishable "[b]y imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment" (i.e., a "wobbler") if "(A) Both the pistol, revolver, or other firearm capable of being concealed upon the person and the unexpended ammunition capable of being discharged from that firearm are either in the immediate possession of the person or readily accessible to that person, or the pistol, revolver, or other firearm capable of being concealed upon the person is loaded as defined in subdivision (g) of Section 12031" and "(B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106, as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person."

Section 12031 makes it a crime to carry a loaded firearm in a public place. "A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place

or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." (§ 12031, subd. (a)(1).) Like section 12025, section 12031 specifies different punishments depending on various other factors. As applicable here, the statute makes the crime of carrying a loaded firearm in a public place punishable "by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment" (again, a wobbler) "[w]here the person is not listed with the Department of Justice pursuant to Section 11106, as the registered owner of the handgun." (§ 12031, subd. (a)(2)(F).)

Hall asserts that "[t]he elements of [the crime defined in] section 12025, subdivision (b)(6) are . . . carrying a concealable, loaded, unregistered firearm." He further asserts that "[t]he only element in section 12025, subdivision (b)(6) which is not present in section 12031, subdivision (a)(2)(F) is the 'concealed' aspect of the [latter] statute." In other words, he contends that a person who carries a concealed, loaded firearm that is not registered to him is guilty of violating both statutes and can be convicted of only the greater offense—carrying a concealed weapon.

Hall is mistaken because he has not accounted for one of the elements of the crime defined by section 12031: the requirement that the firearm be carried *in a public place*—that is, "while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." (§ 12031, subd. (a)(1).) There is *no* such requirement in section 12025. Thus, a person who carries a concealed, loaded firearm that is not registered to him in a *private* place may be guilty of violating section 12025 without violating section 12031. Because the latter offense is not necessarily included in the former, Hall's two convictions were proper.

V

*Sentencing Issues*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 380.

## DISPOSITION

Defendants' convictions on the first count of receiving stolen property (count five) are reversed. In all other respects, the judgments are affirmed. The trial court shall prepare amended abstracts of judgment reflecting this disposition and forward a certified copy of each abstract to the Department of Corrections and Rehabilitation.

Scotland, P. J., and Blease, J., concurred.

The petition of appellant Kelvin Anthony Hollins for review by the Supreme Court was denied July 14, 2010, S182272.